IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMANTHA SANDERS | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:15-cv-00680 |
| | § | |
| CAMBRIAN CONSULTANTS (CC) AMERICA, INC., D/B/A RPS, WESTERNGECO, LLC AND VOLSTAD MARTIME AS | § § § | |

**Plaintiff's Motion to Remand**

The Court should remand the above numbered cause because:

- The majority of Courts that have taken up this issue have held that general maritime cases are not removable as a federal question. It is has been well accepted for more than two centuries that maritime cases filed in state court pursuant to the Saving to Suitors clause cannot be removed unless an independent basis for federal jurisdiction exists. If Defendants' radical argument were correct, it would have the absurd result of denying maritime plaintiffs the right to a jury trial and would make it impossible to ever litigate a maritime case in state court;

- Removal on the sole basis of maritime jurisdiction effectively eliminates Plaintiff's right to a jury trial which is a common law remedy provided under the Saving to Suitors clause;

- Defendant has not met its burden of proving that Plaintiff is not a Jones Act seaman. Plaintiff meets both prongs under the *Chandris* seaman status two-prong test: Plaintiff contributed to the function of the vessel and had a substantial connection in duration and nature to the vessel;

- Even assuming Defendant's argument regarding Jones Act status were meritorious, it would still be relying on the same basis for removal—i.e. general maritime law—which would be improper.

**I.**

**Evidence**

**Exhibit A:** Plaintiff's Fourth Amended Complaint, December 9, 2014.

**Exhibit B:** Defendant Volstad Maritime AS' Notice of Removal, March 13, 2015.

## II.

## Background

Plaintiff was a Jones Act seaman employed by Defendant RPS while aboard the vessel Geco Tau, which was owned and operated by WesternGeco, Schlumberger and Volstad Maritime AS. While the Geco Tau was deployed on navigable waters, the captain of the vessel sexually assaulted Plaintiff. On several occasions in October 2013, the captain approached Plaintiff from behind and rubbed himself against her. He also attempted to force himself on Plaintiff by attempting to kiss her. Plaintiff struggled to push the captain away and reject his physical and sexual assaults. She reported the incident to RPS and Volstad who employed the captain.

Plaintiff suffered significant emotional injuries as a result of these sexual advances. *See* Ex. A. Consequently, she filed suit in Harris County on August 11, 2014 pursuant to the Saving to Suitors clause. *Id*. Thereafter, Defendant, Volstad Maritime AS improperly removed the case. *See* Ex. B. Volstad mistakenly asserts two bases for removal[1]:

- General maritime claims are removable (28 U.S.C. § 1333)
- Plaintiff's Jones Act claim is improper because Plaintiff is not a Jones Act Seaman

Nineteen courts around the country have rejected defendant's sweeping claim that general maritime claims are removable and within the federal district court's original jurisdiction. For more than 220 years since the passage of the Judiciary Act of 1789, it has

[1] Plaintiff refutes Volstad's claim that complete diversity exists given that RPS is headquartered in Houston, Texas, Schlumberger and WesternGeco, LLC are headquartered in Houston, Texas and are residents of this state. Under the forum defendant rule, 28 U.S. § 1441(b), "a civil action otherwise removable solely on the basis of the jurisdiction

been uniformly held and understood that maritime claims pursued in state court could not be removed unless an independent ground for original federal jurisdiction (federal question or diversity) existed. Indeed, 28 U.S.C. § 1333(1) explicitly saves to suitors the right to pursue common law remedies for maritime claims in state court. Because it is clear that the amendment to the Federal Removal statute does not permit removal of this case, it must be remanded.

Contrary to Volstad's baseless assertions, Plaintiff was a Jones Act seaman. Plaintiff was a seaman given that she aided in the mission of the vessel and had a substantial connection in duration and nature to the vessel. Moreover, seaman status is a fact intensive issue that is not properly determined at the time of the pleadings. This case was only recently filed and discovery on this issue has not yet taken place. The Fifth circuit has repeatedly held that the issue of seaman status must be determined by the jury. *See Offshore Co v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959). Consequently, remand is proper.

**III.**

**THE COURT SHOULD REMAND THIS CASE**

**I. GENERAL MARITIME CASES ARE NOT REMOVABLE**

It has long been held that maritime actions are not removable except for original federal jurisdiction, such as federal question or diversity. Indeed, the saving to suitor clause in 28 U.S.C. § 1333(1) explicitly provides the right to pursue common law remedies for maritime claims in state court.

Congress amended 28 U.S.C. § 1441(b) in December 2011. Not until a year after its enactment did a defendant remove a maritime case premised on the amendment to 28 U.S.C.

§ 1441(b). *See Ryan v. Hercules Offshore, Inc*., 945 F. Supp. 2d 772 (S.D. Tex. 2013).[2] In *Ryan*, the Defendants alleged that a plain reading of the amendment to 28 U.S.C. § 1441 makes previously unremovable claims removable. Specifically, the Defendants argued:

> When Congress amended section 1441, it left the reference in section 1441(a) to cases in which courts have "original" jurisdiction being removable unless prohibited by an act of Congress. However, it deleted the text in section 1441(b) upon which courts in the Fifth Circuit relied as being an "Act of Congress" that precluded removal of cases that did not meet the other requirements of section 1441(b). The new version of section 1441(b) speaks solely to cases that are removed on the basis of diversity of citizenship.

Respectfully, *Ryan* incorrectly held that the amendment to Section 1441(b) renders all general maritime claims removable, which is a complete break from *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959).

Since this decision, the majority of courts that have ruled on this issue have held that the amendment to §1441(b) does not make maritime claims removable. Plaintiff respectfully submits the Court should follow these cases and grant remand.

***A. Nineteen Courts after Ryan v. Hercules, including Judges in the Southern District of Texas, have held that general maritime cases are not removable in light of the amendment to the Federal Removal statute.***

An overwhelming number of opinions have gone against Defendant's position in this case:

- *Alexander v. Seago Consulting, LLC*, 2014 WL 2960419, at *1 (S.D. Tex. June 23, 2014) (Hoyt, K.) (The court finds the reasoning of cases such as *Perrier v. Shell Oil Co.,* 2014 WL 2155258 (E.D.La. May 22, 2014); *Rogers v. BBC Chartering America, LLC,* 2014 WL 819400 at *1 (S.D.Tex. Mar.3, 2014) (Hoyt, J.); *Coronel v. AK Victory,* 2014 WL 820270 (W.D.Wash. Feb.28, 2014); and *Barry v. Shell Oil Co.,* 2014 WL 775662 at *3 (E.D.La. Feb.25, 2014) more persuasive than *Ryan v. Hercules Offshore, Inc.,* 945 F.Supp.2d 772 (S.D.Tex.2013));

[2] Plaintiff is well aware that this Court decided the Ryan case and nothing in this brief is meant to disparage the Court.

- *Rogers v. BBC Chartering Am., LLC*, 2014 WL 819400, at *1 (S.D. Tex. Mar. 3, 2014) (Hoyt, K.) (Holding that it is "well accepted that maritime cases filed in state court cannot be removed to federal court unless an independent basis for federal jurisdiction exists. Nothing in the 2011 amendments to the removal statutes altered this traditional understanding.");

- *Figueroa v. Marine Inspection Services, LLC*, 2014 WL 2958597, at *4 (S.D. Tex. July 1, 2014)(Ramos, N.) (holding that "'original jurisdiction' evaporated when he filed his action in state court, making the claims nonremovable on the basis of admiralty jurisdiction. There is no separate basis for federal jurisdiction in this case so removal is improper.");

- *Coronel v. AK Victory*, 2014 WL 820270, at *11 (W.D. Wash. Feb. 28, 2014) (Court holds that its role is to adhere to the precedent before it and in its order granting plaintiff's remand "seeks to give effect to not only the judiciary's long-standing interpretation of the savings clause of Section 1333, but also the considerations expressed in *Romero* and echoed in later cases precluding removal of savings clause claims.");

- *Perrier v. Shell Oil, Co.,* 2014 WL 2155258 at *3 (E.D. La. May 21, 2014) (holding that "in sum, this Court does not agree that the 2011 amendments to § 1441 eliminated the long-held requirement of diversity jurisdiction in saving cases filed in state court.")

- *Gabriles v. Chevron USA, Inc.*, 2014 WL 2567101 at *4 (W.D. La. June 6, 2014)("The Court disagrees that the 2011 amendment altered the long-held understanding that admiralty claims brought at law in state court pursuant to the saving to suitors clause are not removable in the absence of an independent jurisdictional basis. Rather, the Court agrees with the reasoning of *Perrier v. Shell Oil Co.* 2014 WL 2155258 (E.D. La. 5/22/ 2014)");

- *Pierce v. Parker Towing Co., Inc.*, 2014 WL 2569132 at *7 (S.D. Ala. June 9, 2014) (finding that remand is the only result that preserves plaintiffs' common law remedy of trial by jury under existing law.");

- *Hamerly v. Tubal-Cain Marine Services, Inc.*, 2014 WL 5149752 at *5 (E.D. Tex. June 12, 2014) (Court holding that it " will continue to adhere to the established rule that maritime cases brought in state court are not subject to removal due to the "saving-to-suitors" clause of § 1333 and, therefore, are not removable under § 1441(a).");

- *In re Foss Maritime Co.*, 2014 WL 2930860 at *4 (W.D. Ky. June 27, 2014) ("the Court has determined as a matter of law that the 2011 Amendments to the removal

statute did not displace state courts' concurrent jurisdiction regarding maritime issue.");

- *Porter v. Great American Ins. Co.*, 2014 WL 3385148 at *1 (W.D. La. July 9, 2014) ("The Fifth Circuit has yet to directly address whether the amendment to the language of 28 U.S.C. § 1441 permits the removal of general maritime claims. Without clear guidance on the issue, this court will join the reasoning set forth by the Western and Eastern Districts of Louisiana in finding that Plaintiff's claims remain unremovable");

- *Cassidy v. Murray*, 2014 WL 3723877 at *5 (D. Md. July 24, 2014) (finding that "Because all parties are Maryland residents and there is no federal question presented, an independent jurisdictional basis for removal is absent from this case.");

- *Gregoire v. Enterprise Marine Services, LLC*, 2014 WL 3866589 at *10 (E.D. La. Aug. 6, 2014) (this Court "does not find that Enterprise lacked an objectively reasonable basis for seeking removal. Given the unsettled nature of district court opinions on the removability of general maritime law claims and dearth of definitive guidance on the issue from the Fifth Circuit, the Court is of the opinion that seeking removal in this case was objectively reasonable if not strategically sound.");

- *Bartman v. Burrece*, 2014 WL 4096226 at *4 (D. Alaska Aug. 18, 2014) (finding that a "trial by jury is an "obvious" form of remedy available to suitors at common law and would be unavailable to Plaintiffs before this Court if based solely on admiralty or maritime jurisdiction, removal to this Court would not "save" this remedy to which Plaintiffs would otherwise be entitled.");

- *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 2014 WL 4231186 at *6 (E.D. La. Aug. 26, 2014) (upholding the ruling in Gregoire and stating "this Court is unable to come to terms with the fact that such an interpretation would render the saving-to-suitors clause meaningless—a result that is inconsistent with the historical underpinnings of admiralty jurisdiction.");

- *Riley v. Llog Exploration Co. LLC*, 2014 WL 4345002 at *5 (E.D. La. Aug. 28, 2014) ("the Court is left with the firm conviction that the savings clause of section 1333prohibits this case from proceeding in admiralty. To be sure, courts have long held that the "saving-to-suitors" clause is not an independent bar to removal.");

- *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, 2014 WL 4489618 at *4 (E.D. La. Sept. 10, 2014) (finding that the analysis in *Ryan* fails because it "overlooks the long history of maritime removal jurisdiction; it is based on the mistaken premise that § 1333 confers original federal jurisdiction over maritime cases brought at law, as opposed to in admiralty; and it gives the defendants the power to convert the plaintiff's suit at law to a suit in admiralty.");

- *Dyche v. US Environmental Services, LLC*, 2014 WL 5473238 at *5 (E.D. Tex. Oct. 30, 2014) (this court "will continue to adhere to the established rule that maritime cases brought in state court are not subject to removal due to the "saving-to-suitors" clause of § 1333 and, therefore, are not removable under § 1441(a)");

- *Yavorsky v. Felice Navigation, Inc.*, 2014 WL 5816999 at *4 (E.D. La. Nov. 7, 2014) (holding that "the reasoning stated in *Gregoire* to be persuasive, and will follow the other sections of this court in holding that the 2011 Amendments to § 1441 did not change the traditional non-removability of general maritime law claims initiated in state court, and such claims are not removable without an independent basis of subject matter jurisdiction."); and

- *Harrold v. Liberty Ins. Underwriters*, 2014 WL 5801673 at *3 (M.D. La. Nov. 7, 2014) (The Court "believes that the correct view is also the majority view and that general maritime claims are not removable, despite the changes to 28 U.S.C. § 1441.").

As the above cases demonstrate, the vast majority of courts agree that the 2011 amendments to § 1441 have not created a novel basis for removal of maritime claims. The Court should continue to adhere to the established maritime law allowing plaintiffs to maintain actions in state court and preserve their right to a jury trial.[3]

### *B. The Saving to Suitors Clause Prohibits Removal of Cases Based Solely on Admiralty Jurisdiction*

Federal Courts have exclusive jurisdiction over admiralty cases. See 28 U.S.C. § 1333(1) ("The district court shall have original jurisdiction, exclusive of the courts of the states, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."). The Saving to Suitors clause, which dates back to 1789, unequivocally permits a plaintiff to file a common law case in

[3] Only a handful of Courts have opted to follow Defendant's reasoning. *See e.g., Carrigan v. M/V AMC Ambassador*, 2014 WL 358353 (S.D. Tex. Jan. 31, 2014) (following the logic of *Ryan* and *Wells*); *Exxon Mobil Corp v. Starr Indem.&Liab. Co*., 2014 WL 2739309 (S.D. Tex. June 17, 2014) (The court granted a motion for reconsideration and the case was remanded after reviewing legal authority from the Fifth Circuit. *See Exxon Mobil Corp v. Starr Indem. &Liab. Co*., 2014 WL 4167807); *Bridges v. Phillips 66 Co*, 2013 U.S. Dist. LEXIS 164542 (M.D. La. 2013) (holding that *Ryan* and *Wells* is "persuasive"); *Wells v. Abe's Boat Rentals, Inc*., 2013 WL 3110322, at 1 (S.D. Tex. 2013).

state court. *See* 28 U.S.C. § 1333(1) ("district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."); *See Romero v. Int'l Terminal Operating Co*., 358 U.S. 354, 371 (U.S. 1959) (finding that the "historic option of a maritime suitor pursing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would be freely removable under §1441 of Title 28).

In these instances, an exception is invoked to original admiralty jurisdiction. *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 223 (5th Cir. 2013) ("admiralty jurisdiction is not present in this suit because [the plaintiff] filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction.") (citations omitted); *General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916, 919-20 (Tex. 1993); *Thurman v. Harris County*, 2009 WL 1635430 at *3 (Tex. App.—Houston [1st Dist.] June 11, 2009, pet. denied) ("As federal and state courts have recognized, maritime law does not affect a state court's subject matter jurisdiction over the action, but instead prescribes the substantive law governing the state court action."). In other words, the maritime flavor of a case filed in state court pursuant to the Saving to Suitors clause does not transform the common law case into a case that falls within the original (or exclusive) admiralty jurisdiction of the federal courts.

Since its inception in 1789, the Saving to Suitors clause has been consistently interpreted to mean that cases cannot be removed on the sole basis of maritime jurisdiction. Instead, such cases can only be removed when there is an independent basis for federal jurisdiction such as diversity or federal question jurisdiction. The Fifth Circuit has continued to recognize this age-old principle in at least two recent cases. *Barker*, 713 F.3d at 223

(“cases invoking admiralty jurisdiction under 28 U.S.C. § 1333 may require complete diversity prior to removal . . .”) (internal citations omitted); *In re Eckstein Marine Service, L.L.C.*, 672 F.3d 310, 315-16 (5th Cir. 2012) (“Under 28 U.S.C. § 1333(1), a plaintiff may elect to bring admiralty and maritime claims in state court rather than federal court. These cannot be removed in the absence of diversity unless there exists some basis for jurisdiction other than admiralty.”) (internal quotations omitted). Consequently the Court should not ignore a long history of maritime jurisprudence and find that removal is proper.

### *C. Removal on the Sole Basis of Maritime Jurisdiction Effectively Eliminates Plaintiff’s Right to a Jury Trial.*

Besides allowing a party to file a maritime case in state court, the Saving to Suitors clause also protects the common law remedies that a maritime plaintiff is allowed to pursue in state court. *Poirrier v. Nicklos Drilling Co*., 648 F.2d 1063, 1066 (5th Cir. 1981). A jury trial is not available in federal court when Section 1333 is the only basis for subject matter jurisdiction. *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983). If cases could be removed on the sole basis of maritime jurisdiction, then the Saving to Suitors clause’s guarantee of the right to a jury trial would be rendered illusory. *See Pierce v. Parker Towing Co., Inc.*, 2014 WL 2569132, at *7 (S.D. Ala. June 9, 2014) (finding that remand is the only result that preserves plaintiffs' common law remedy of trial by jury under existing law.”)

Recognizing the importance of this issue, some courts have based their remand decisions solely on this issue. In *Figueroa*, the court chastised the *Ryan* decision and its progenies stating “these courts did not address the fact that removal of saving to suitors clause claims could allow defendants—unilaterally—to eliminate a plaintiff’s right to a jury

trial. This is a deprivation ostensibly preserved by the saving to suitors clause." 2014 WL 2958597 at *3; *See also Barry v. Shell Oil Co.*, 2014 WL 775662, at *3 (E.D. La. Feb. 25, 2014) (finding that "since the removal of Plaintiff's claim solely on the basis of admiralty jurisdiction would deprive him of the right to pursue his non-maritime remedy of a jury trial, the saving to suitors clause under these circumstances prohibits the removal of this action."). Indeed, a Court within this District recently addressing this exact issue found:

> Furthermore, the pending motion to strike Plaintiff's jury demand presents precisely the type of problem posed by removing such admiralty claims from state court. The Fifth Circuit has held that the tradition of bench trials on admiralty issues in federal court cannot trump a plaintiff's constitutional right to a jury trial for non-admiralty claims. The right to a jury trial is one of the clear non-maritime remedies preserved for plaintiffs by the "saving to suitors" clause. Numerous courts have identified the challenge in determining whether removal admiralty cases would be entitled to a jury trial as additional support for the conclusion that such cases should remain in state court. The Court agrees with this conclusion.

*See Rutherford v. Breathwite Marine Contractors, Ltd.*, 2014 WL 6388786, at * 4 (S.D. Tex. Nov. 12, 2014) (Gilmore, V.) (citations omitted).

Given that the main reason for the Saving to Suitors clause is to guarantee plaintiffs the right to a jury trial (and allowing removal on the sole basis of admiralty jurisdiction would nullify that right), the Court should find that the Saving to Suitors clause is an Act of Congress that prohibits removal unless there is an independent basis for federal jurisdiction.[4]

***D. The Supreme Court has repeatedly held that amendments to jurisdictional statutes should be construed to maintain the status quo in maritime jurisdictional jurisprudence unless Congress explicitly states that it intends to make maritime cases removable.***

---

[4] When a Saving to Suitors case is removed on independent jurisdictional grounds, the Seventh Amendment is implicated and the right to a jury trial is preserved. *See T.N.T. Marine Services*, 702 F.2d at 587 ("the Seventh Amendment right to trial by jury in suits at 'common law' applies to diversity suits but not admiralty suits.").

Since 1789, there has been no serious debate that maritime claims filed in state court are not removable absent complete diversity of the parties or the existence of a federal question. *See Romero,* 358 U.S. at 354 n. 16 ("The removal provisions of the original Judiciary Act of 1789, 1 Stat. 79, conferred a limited removal jurisdiction, not including cases of admiralty and maritime jurisdiction. In none of the statutes enacted since that time have saving-clause cases been made removable."); *See also Perio*, 2013 WL 5563711 at *10 ("Traditionally, maritime claims brought in state court were not removable"). Defendant relies on *Ryan* for the erroneous proposition that the 2011 amendments to Section 1446(b) changed this two-centuries' old understanding. Such reliance is misguided because the change to Section 1441(b) makes no mention of maritime claims and does not explicitly overturn 220 years of maritime jurisprudence. As the Supreme Court explained in *Romero*, such a far-reaching and momentous change to centuries of law surrounding the Saving to Suitors clause requires overt language that leaves no doubt about the intent of the statute. The 2011 amendment does not provide such clarity.

*Romero* dealt with the question of whether maritime cases presented a federal question under 28 U.S.C. § 1331. The *Romero* Court acknowledged that the plain language of an amendment to the jurisdictional statute at issue (the Judiciary Act of 1875) could be read to include maritime claims as federal question claims. *Romero*, 358 U.S. at 377-78. But *Romero* refused to interpret the amendment according to its plain language because "[t]he simple language of the Act of 1875 conceals complexities of construction and policy" inherent in maritime jurisdictional jurisprudence. *Id*. at 378. In coming to its conclusion, *Romero* first explained the importance of the Saving to Suitors clause in jurisdictional decisions:

> Thus the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of §1331, since saving-clause actions would then be freely removable under §1441 of Title 28, 28 U.S.C.A. s1441. The interpretation of the Act of 1875 contended for would have consequences more deeply felt than the elimination of a suitor's traditional choice of forum. By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.
>
> * * *
>
> The role of the States in the development of maritime law is a role whose significance is rooted in the Judiciary Act of 1789 and the decisions of this Court. Recognition of the part the States have played from the beginning has a dual significance. It indicates the extent to which an expanded view of the Act of 1875 would eviscerate the postulates of the saving clause, and it undermines the theoretical basis for giving the Act of 1875 a brand new meaning.

358 U.S. at 371-72.

The Court further noted that to deprive a maritime plaintiff of his rights under the Saving to Suitors clause would mark a "revolutionary procedural change," and simply could not be effectuated by an amendment to the jurisdictional statutes that was not intended to change the way maritime claims are administered in the state and federal courts.*Id*. at 368-69 ("But neither the aim of the Act of 1875 to provide a forum for the vindication of new federally created rights, nor the pressures that led to its enactment, suggest, even remotely, the inclusion of maritime claims within the scope of that statute.").The Court concluded that rendering maritime (i.e. saving clause) cases removable without an independent basis for federal jurisdiction would constitute a "novel sweep to the [jurisdictional statutes]" and would "disrupt traditional maritime policies and quite gratuitously disturb a complementary, historic interacting federal-state relationship." *Id*. at 375. As a result, *Romero* made clear that, when interpreting whether amendments to jurisdictional statutes affect maritime jurisdiction, courts should do so by looking at the "history" and "legal lore" of the Saving to

Suitors clause and the "due regard [it gives] for the interests of our federal system." *Id*. at 378-79. Indeed, [i]f the history of the interpretation of judiciary legislation teaches anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words." *Id*. at 379.

Since the history and legal lore behind the Saving to Suitors clause clearly prohibits removal of stand-alone maritime claims, an amendment to the jurisdictional statutes will not be interpreted to eliminate this prohibition unless it is clear and unequivocal:

> However, in our examination of the manifold considerations of history, of construction, of the policy which underlies the allocation of competence over maritime matters in our federal system, and the considerations of judicial administration and procedure called into question—all of which direct us to the rejection of the proposed infusion of general maritime jurisdiction into the Act of 1875—we are pointed to no considerations which lead us to overturn the existing maritime jurisdictional system—a system which is as old, and as justified by the experience of history, as the federal courts themselves.

*Id*. at 380; *See also id.*at 371 ("It is difficult to accept that . . . a most far-reaching change was made subterraneously.").

Here, the 2011 amendments (like the 1875 amendments) were clearly not intended to change existing maritime jurisdictional jurisprudence. The 2011 legislation did not eliminate or amend the Savings to Suitors clause. Maritime law was not even mentioned in the legislative history and there was no debate or discussion about making a sweeping change to 200 years of black letter maritime removal law. When the statute was enacted, defendants did not immediately begin removing maritime cases to federal court. The admiralty bar did not quickly begin conducting CLEs around the country to ensure that all of its practitioners understood what would undeniably be a titanic shift in maritime law. Indeed, even the *Ryan* court recognized that *Ryan's* interpretation of the effect of the 2011 amendment was

probably unintended by Congress. *See Ryan*, 945 F.Supp.2d at 777 ("While it is possible that Congress did not intend for the changes to section 1441 to be substantive . . ."). But if *Romero* stands for anything, it stands for the proposition that courts should not find that Congress unintentionally made sweeping changes to maritime jurisdictional jurisprudence.

## II. DEFENDANT HAS NOT MET ITS HEAVY BURDEN OF DISPROVING PLAINTIFF'S SEAMAN STATUS

The United States Supreme Court devised a two-part test for determining whether an employee qualifies as a seaman under the Jones Act. *See Chandris v. Latsis*, 515 U.S. 347, 368 (U.S. 1995). First, a seaman must "contribute to the function of the vessel or the accomplishment of the mission." *Id*. Second, a seaman "must have a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *Id*. The purpose of the substantial connection requirement is to separate sea-based employees from those of land-based maritime workers who only have a sporadic or transient connection to a vessel and are not subject to the perils of the sea. *Id*.

Plaintiff clearly meets both prongs under the seaman status test delineated by *Chandris*. In regards to the first prong, Plaintiff was an active crewmember participating in the function of the vessel. Plaintiff ate, slept and worked aboard the vessel with the crew everyday for five weeks during her hitches. Additionally, she controlled, maintained and used the equipment on the vessel in the same manner as the other crewmembers aboard the Geco Tau. Plaintiff not only assisted the mission of the vessel but she was also an indispensible member of the crew, ensuring that all safety protocols and federal regulations were followed. Much of the equipment and tools aboard the vessel could not be operated without her presence.

Additionally, Plaintiff had a substantial connection to the Geco Tau in both duration and nature. She was aboard the vessel, which was deployed in navigable waters, twenty-four hours a day for five weeks. In enacting the Jones Act, Congress meant to create "heightened legal protections that seamen receive because of their exposure to 'perils of the sea.'" *Chandris*, 515 U.S. at 354. Plaintiff was subject to the same perils of the sea as other crewmembers, including deckhands, coxswains, engineers, and roustabouts. The realities of life aboard a vessel require Plaintiff to maintain open communication and actively participate in tasks with vessel operators, crewmembers and all personnel on board. As the Court noted in *Jones v. Francis Drilling Fluids, Ltd.*, 642 F.Supp.2d 643, 664 (S.D.Tex. 2009) (*citing Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir. 1986):

> Any other result would deny the realities of maritime life, particularly life aboard drilling vessels. Numerous contractors, subcontractors and subsubcontractors must work together in close quarters, all working toward a common goal but performing diverse tasks…. Off-duty or otherwise uninvolved employees are placed at risk by the myriad goings-on no less than the employees who actually perform the drilling, welding, cooking, and so on. Judicial attempts to determine which injuries occurred "in connection with" which activities are destined to produce unprincipled distinctions and cannot be expended to address the countless possibilities for injuries in the offshore workplace.

It is well settled that the Defendant's burden of persuasion regarding seaman status is **heavy**, they must show "there is no possibility that plaintiff would be able to establish a cause of action." *See Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993); *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir. 1967); *Zertuche v. Great Lakes Dredge & Dock Co., LLC.*, 306 Fed.Appx. 93, 97 (5th Cir. 2009) (holding that it is "the **heavy burden** of Great Lakes to show that there is no possibility that Zertuche could prove these facts to establish his seaman status.") (emphasis added). The district court must resolve any and all disputed questions of fact in favor of the Plaintiff. *Id*; *see also B., Inc. v.*

*Miller Brewing Co*., 663 F.2d 545 (5th Cir. 1981). Several courts have chastised the practice of allowing Defendants to routinely try the question of seaman status in Federal Court by merely filing a petition for removal. *See Lonthier v. Northwest Insurance Co.*, 599 F.Supp. 963, 965-66 (W.D.La. 1985). Indeed, the Fifth Circuit has clearly held that such "pre-trial of substantive factual issues in order to determine the existence of subject matter jurisdiction or removal is an inappropriate judicial exercise." *Kattelman v. Otis Engineering Corp*., 701 F. Supp. 560, 566 (E.D.La. 1988). Given that the determination of seaman status is a "fact intensive question, generally left to juries, it seems particularly inappropriate to decide in a remand motion." *See Green v. Ross Island Sand & Gravel Co.*, 2014 WL 262133 N.D. Cal., at * 2 (January 23, 2014).

In this instance, Defendant has not met its heavy burden or showing that Plaintiff is not a Jones Act Seaman. Specifically, Defendant merely claims that as a marine mammal observer ("MMO"), Plaintiff does not qualify as a seaman. *See* Ex. B. at 3-4. Defendant has not provided any other evidence to support its contention that Plaintiff is not a seaman. *See e.g., Kattelman*, 701 F.Supp. at 566 (holding that Defendant has not met is burden of showing that removal is proper because Defendants' only proof refuting Plaintiff's seaman status is the fact that decedent was a wireline worker); *Zertuche*, 306 Fed.Appx. at 98 (finding that Defendant's rebuttal affidavit listing Plaintiff's job title as dump foreman did not "carry its heavy burden of showing that there was no possibility of Zertuche establishing his seaman status."). Even assuming arguendo that Defendant provided evidence refuting Plaintiff's seaman status, this is an issue that is ordinarily left for the jury to decide. *Ellender v. Kiva Cons. & Engin'g, Inc*., 909 F.2d 803, 805 (5th Cir. 1990); *see also Offshore*, 266 F.2d at 780 ("Congress has seen fit to allow juries to decide who are seaman under the Jones

Act"). If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of the crew', it is a question for the jury. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (U.S. 1991). Given that Defendant has not met its burden of disproving Plaintiff's seaman status, remand is proper.

## III. Even if Volstad's Jones Act contentions were meritorious, it would still be relying upon General Maritime law as the sole basis for removal.

Assuming Volstad was correct that Plaintiff was not a Jones Act seaman at the time she was sexually assaulted, which is not the case, Volstad would still be relying upon General Maritime law as the sole basis for its removal of the case. Based on the foregoing analysis, the case was improperly removed in this regard and should be remanded.

## IV.

## Conclusion

The Court should grant Plaintiff's Motion and remand this case.

Respectfully submitted,


**PIERCE SKRABANEK BRUERA, PLLC**

*/s/ M. Paul Skrabanek*

M. PAUL SKRABANEK
State Bar No. 24063005
3701 Kirby Drive, Suite 760
Houston, Texas 77098
Telephone: (832) 690-7000
Facsimile: (832) 575-4840
E-mail: paul@psbfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on April 10, 2015, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record.

*/s/ M. Paul Skrabanek*

M. Paul Skrabanek