UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMANTHA SANDERS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-680 |
| | § | |
| CAMBRIAN CONSULTANTS (CC) AMERICA, INC. | § | |
| D/B/A RPS and VOLSTAD MARITIME AS, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is plaintiff Samantha Sanders' motion to remand. Dkt. 10. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED and this case should be REMANDED to the 215th District Court of Harris County, Texas.

### I. BACKGROUND

Sanders filed a petition in the 215th District Court of Harris County, Texas, against RPS Group, PLC, WesternGeco AS, WesternGeco, LLC, Schlumberger, Ltd., and Volstad Maritime AS, asserting various claims associated with the alleged sexual assault against Sanders by the captain of the seismic vessel M/V GECO TAU while Sanders was working aboard the vessel.[1] Dkts. 1-2, 10. Sanders asserted in her state-court petition that the state court had jurisdiction under the Savings to Suitors clause, 28 U.S.C. § 1333, and that the case was not removable because she is a Jones Act seaman. Dkt. 1-2. Nevertheless, on March 13, 2015, defendant Volstad Maritime AS ("Volstad")

---

[1] After the case was removed, Sanders voluntarily dismissed WesterGeco AS, WesternGeco LLC, and Schlumberger Ltd. Dkt. 15.

removed the case to this court, arguing that Sanders is asserting a general maritime claim removable under 28 U.S.C. § 1441(a) and that Sanders is not a seaman as a matter of law because she served as a marine mammal observer while aboard the M/V GECO TAU. Dkt. 1. Sanders now moves for remand, asserting that (1) general maritime cases are not removable; and (2) Volstad cannot show that Sanders is not a seaman. Dkt. 10.

## II. ANALYSIS

While admiralty claims traditionally are not removable, this court has held that amendments to the removal statute in 2011, when read in conjunction with binding caselaw from the Fifth Circuit, rendered previously unremovable admiralty claims removable. *See Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013). Sanders asks that this court reconsider its decision in *Ryan* in light of several cases that have rejected *Ryan*. Dkt. 10. The Fifth Circuit has yet to address the issue.

In addition to her maritime claim, Sanders asserts a Jones Act claim. Volstad concedes that Jones Act claims are not removable per 45 U.S.C. § 1445(a), which is incorporated into the Jones Act. Dkt. 13. Volstad contends, however, that the Jones Act claim does not bar removal in this case because Sanders's Jones Act claim is fraudulently pleaded. *Id.* Sanders contends that she was a seaman and that Volstad cannot meet the heavy burden of proving otherwise. *Id.* Sanders additionally argues that even if Volstad could offer evidence that Sanders was not a seaman while aboard the M/V GECO TAU, the issue of determining seaman status is ordinarily left to the jury. *Id.*

**A.     Seaman Status**

The court will start by determining whether Volstad has met its burden of demonstrating that the Jones Act claim is fraudulently pleaded.

The Jones Act provides a remedy and guarantees a right to trial by jury for seamen who are injured or die in the course of employment. 46 U.S.C. § 30104. It expressly incorporates the general provisions of the Federal Employees Liability Act ("FELA"). *Id.* FELA cases filed in state court cannot be removed to federal district courts, and because the Jones Act incorporates FELA, Jones Act cases also cannot be removed. *See* 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees, rising under sections 1–4 or 5–10 of the Act . . . may not be removed to any district court of the United States."); *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 206–07 (5th Cir. 1993) ("It is axiomatic that Jones Act suits may not be removed from state court.").

A defendant may overcome the bar to removal if the Jones Act claim is fraudulently pleaded. *Lackey*, 990 F.2d at 207. "'[T]he mere assertion of fraud is not sufficient to warrant removing [a Jones Act] case to federal court.'" *Id.* (quoting *Yawn v. S. Ry.*, 591 F.2d 312, 316 (5th Cir. 1979)). Instead, a defendant wishing to remove a Jones Act claim that he or she contends is fraudulently pleaded must "prove that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of the plaintiff." *Id.* The defendant must, in fact, "show that there is no possibility that plaintiff would be able to establish a cause of action." *Id.* The defendant may pierce the pleadings to show that the Jones Act claim was fraudulently pleaded to prevent remand. *Id.*

Not every maritime employee who is injured is covered by the Jones Act. In order to qualify as a "seaman" covered by the Jones Act, "'an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission," and the employee "must have a connection to the vessel in navigation (or to an identified group of vessels) that is substantial in terms of both its duration and its nature." *Chandris v. Latsis*, 515 U.S. 347, 368–69, 115 S. Ct. 2172 (1995) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S. Ct. 807 (1991)).

Volstad contends that Sanders is not a seaman because she was a contractor who was aboard the M/V GECO TAU to act as a statutorily required marine mammal observer ("MMO"). Dkt. 13 & Ex. A ¶ 2 (Perkins Aff.). The United States Department of the Interior Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement Gulf of Mexico Outer Continental Shelf Region requires seismic operators to use visual observation procedures when conducting seismic surveys. Dkt. 13, Ex. C. Under these procedures, visual observers must use trained observers who may not be assigned other duties during their visual observation watches. *Id.* According to Volstad and the chief operating officer of Sanders's employer, who provided an affidavit in support of Volstad's response, Sanders's position aboard the M/V GECO TAU was *solely* as a statutorily required MMO. Dkt. 13, Ex. A ¶ 2.

Sanders contends that she "clearly meets both prongs under the seaman status test delineated by *Chandris*" because she "was an active crewmember participating in the function of the vessel" in that she "ate, slept and worked aboard the vessel with the crew everyday for five weeks during her hitches" and "controlled, maintained and used the equipment on the vessel in the same manner as the other crewmembers." Dkt. 10 at 14. She additionally asserts that she was an indispensable member of the crew because she ensured that all safety protocols and federal regulations were followed and because much of the vessel's equipment could not be operated without her presence. *Id.* She does not provide any evidence for these conclusory statements. *See id.*

Volstad, on the other hand, in addition to providing an affidavit indicating that Sanders was contracted solely as a statutorily required MMO, provides caselaw supporting its contention that individuals who are on a vessel to gather scientific information and report observations are not

4

seamen.[2] *See* Dkt. 13 at 11. In *O'Boyle v. United States*, 993 F.2d 211 (11th Cir. 1993), the Eleventh Circuit considered whether a scientific observer aboard a Japanese fishing vessel "solely because [a] treaty required him to be there in order to observe the types of marine life encountered by the ship during its voyage" was a seaman. The plaintiff contended that the vessel could not accomplish its mission of fishing for squid without him. 993 F.2d at 213. The Eleventh Circuit disagreed. It found that the plaintiff was "not a member of the crew, was not involved with the navigation of the vessel, was not paid by the vessel, had no responsibilities or allegiance owing to the owner or operator of the vessel, was not performing the ship's work nor furthering its purpose." *Id.* at 213.

In *Belcher v. Sundad, Inc.*, 2008 WL 2937258 (E.D. La. Aug. 1, 2007), a federal district court in the Eastern District of Louisiana considered whether a fisheries observer who was gathering information about target and prohibited species aboard a fishing vessel was a seaman. The plaintiff argued that she was a Jones Act seaman because the observer program was legally required for the vessel to operate. 2008 WL 2937258, at *2. The court, however, found that the plaintiff was not a seaman because (1) she did not contribute to the function of the vessel; and (2) she did not have a substantial connection to the vessel in nature or duration. *Id.*

Volstad also relies on *Chauvin v. Furgo-Geoteam SA*, No. 06-2290, 2007 WL 2265233 (E.D. La. Aug. 1, 2007). In *Chauvin*, a federal district court in the Eastern District of Louisiana considered whether an MMO who was injured while being helped onto the work boat that was taking her to a seismic research vessel qualified as a "seaman" under the Jones Act. The plaintiff, like Sanders, was

---

[2] The court does not rely on two unpublished cases cited by Volstad: *Bank of America N.A. v. Pacific Lady* and *Mason v. Alaskan Observers, Inc. See* Dkt. 13 at 11. Volstad failed to append the unpublished cases as required by the section 7(B)(1) of the court's procedures, and these cases were otherwise unavailable to the court.

hired solely in the role of an MMO.  2007 WL 2265233, at *1.  The plaintiff argued that her work was contributing to the ship's mission of performing seismic work and that she was a member of the crew.  *Id.* at *2.  The court determined that the plaintiff was not a seaman, basing this conclusion on the fact that the plaintiff was working on a scientific research vessel and under the Oceanographic Research Vessel Act ("ORVA"), scientific personnel aboard oceanographic research vessels were expressly not considered seamen.  *See id.*; *see also* 46 U.S.C. app. § 444, *repealed by* Pub. L. No. 109-304, § 19 (Oct. 6, 2006).  In 2006, Congress omitted the reference to scientific personnel on research vessels not being considered seamen when it codified Title 46.  The Congressional Record indicates that Congress felt the language was unnecessary because the definition of "seaman" already excludes scientific personnel.  *See* H.R. Rep. No. 109-170 (2005), *as reprinted in* 2006 USCCAN 972.  While this court cannot rely on the repealed provision to find that Sanders is not a seaman, obviously the *Chauvin* court considered MMOs to be "scientific personnel."  This court likewise, having received no evidence to the contrary, considers Sanders "scientific personnel," and thus outside the bounds of the Jones Act.

Here, while Sanders asserts that seaman status is best determined by a jury and that the court should resolve all disputed facts in favor of the plaintiff, Sanders has failed to provide the court with a disputed fact.  Volstad, on the other hand, has provided evidence that Sanders was employed solely as an MMO, and all of the caselaw provided indicates that individuals who are employed solely as statutorily required scientific personnel do not contribute to the function of the vessel.  Accordingly, the court finds that Volstad has met its burden of showing that the Jones Act claim was fraudulently pleaded.  Remand based on the Jones Act claim is not proper.

**B.     Removability of Maritime Claims**

Since the Jones Act claim does not prohibit removal, the court must consider, for the second

time, whether the new removal statute permits removal of general maritime claims. The court starts this analysis by noting that *Ryan* was properly decided on the facts and arguments presented in that case. Several courts considering similar facts and arguments have followed *Ryan*. Several others have elected not to follow *Ryan*. In the absence of binding authority and given the dramatic change to admiralty law associated with the court's reading of the amended statute, disagreement amongst the district courts was not unexpected. Disagreement alone does not cause the court to waiver in its confidence in its decision in the *Ryan* case. That being said, the court is charged with ensuring justice is done, and it is thus willing to reconsider previous decisions when new arguments or facts merit taking a second look.

Here, Sanders has presented a sophisticated argument that was not raised in the *Ryan* case. When the court was considering *Ryan*, there had been no development of caselaw or legal commentary on how the amendment to the removal statute impacted admiralty claims in light of historical precedent and the Savings to Suitors clause. While the Fifth Circuit has not had the opportunity to address the amended statute since the *Ryan* case, numerous legal scholars have considered the issue. The best example of scholarly work on the issue, in the court's opinion, can be found in *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749 (E.D. La. 2014) (Duval, J.). While *Gregoire* is an opinion, not a law review article, it thoroughly explores the history of the law as it relates to admiralty jurisdiction and removal of admiralty cases. It then provides a convincing argument why the amendments to the removal statute do not impact the historical bar on removal of maritime claims filed at law in state court. Specifically, when a maritime claim is filed in state court under the Savings to Suitors Clause, it is transformed into a case *at law*, as opposed to admiralty. The federal district courts thus do not have original jurisdiction under the Savings to Suitors Clause, which provides original jurisdiction over "[a]ny civil case of *admiralty or maritime*

*jurisdiction*, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333 (emphasis added); *Gregoire*, 38 F. Supp. 3d at 759–62.

Sanders, unlike the plaintiff in *Ryan*, raised this argument. The court holds, pursuant to the reasoning set forth in *Gregoire*, that it does not have jurisdiction over the claim Sanders filed in state court pursuant to the Savings to Suitors Clause. Sanders's motion to remand is therefore GRANTED.[3]

### III. Conclusion

Sanders's motion to remand (Dkt. 10) is GRANTED. This case is REMANDED to the 215th District Court of Harris County, Texas.

Signed at Houston, Texas on September 21, 2015.

_____
Gray H. Miller
United States District Judge

---

[3] Volstad argues that although it did not remove the case on this basis, the court may still exercise diversity jurisdiction, as the parties are diverse. Dkt. 13 at 7–8. However, since the court may not exercise original jurisdiction of the claim in admiralty, since it was first filed in state court, the only way it could exercise jurisdiction over the case is pursuant to 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1441(b)(2), civil actions removable based on section 1332(a) "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." Volstad concedes that one of the defendants is headquartered in Houston, Texas. Dkt. 13 at 7.